LAND, J.
Plaintiff sued for the partition by licitation of a certain tract of land, containing about 300 arpents, situated in the parish of Lafourche, and formerly belonging to the succession of Gustave Sabatier. Plain *659 tiff alleged that he acquired the entire tract by inheritance from said succession, and subsequently conveyed an undivided sixth interest therein to Firmin Thibodaux, from whom the defendant acquired said interest through mesne conveyances. Plaintiff prayed that the joint ownership of himself and the Bowie Lumber Company be recognized in the proportion of five-sixths to the plaintiff and one-sixth to the defendant, and for a decree ordering the property to be sold for cash to effect a partition, and for an accounting for timber cut by defendant.
The defendant answered pleading the general issue, and specially denying that the plaintiff had any right or interest in and to the tract of land described in the petition. Further answering, the defendant averred that the Bowie Company had acquired a good and sufficient title to the tohole property sought to be partitioned, from Firmin Thibodaux, through mesne conveyance duly recorded in the parish of Lafourche. Further answering, the defendant pleaded the prescription of 10 years acquirendi causa, and called its vendors in warranty. Plaintiff filed a plea of estoppel, and other pleadings which need not be noted.
The case was tried, and the result was a judgment in favor of the defendant. Plaintiff has appealed.
The first question to be considered is whether Eugene Sabatier sold to Firmin Thibodaux the whole tract of land, or only an undivided sixth interest therein. It is admitted that, at the date of said conveyance, Eugene Sabatier was owner of the entire tract.
On September 30, 1895, Eugene Sabatier sold to Firmin J. Thibodaux the following described property, to wit:
“The undivided one-sixth of a certain tract of land, situated in this parish, on the left bank of Bayou Lafourche, at about fifteen miles below the town of Thibodaux, and at forty arpents from the bayou, being the rear or double concession of the tract formerly belonging to J. B. Guedry.
“The tract of land presently sold being the number twenty-three (23) on the plan of Bougerol, deputy surveyor of the United States, and originally deposited in the office of T. H. Seghers, notary public of New Orleans, and being known as plan number forty-two (42).
“This land was bought by G. Sabatier from the city of New Orleans, by act before O. E. Fortier on the first of February, 1800.
“The present vendor sells all of his rights, titles, and interest in the same, being the one undivided one-sixth of said property.”
[1] The argument of counsel for defendant that the whole tract was conveyed is based entirely on the last paragraph above quoted. If that was all the description of the interest conveyed, the authorities cited in behalf of the defendant would be applicable. But, taking the description as a whole, we find that the vendor conveyed specially “the one undivided one-sixth of the tract,” and the subsequent recital is a mere declaration that the interest so conveyed represented the vendor’s entire right, title, and interest in the property. Dr. Sabatier was in error as to the extent of his interest in the tract of land sold to Thibodaux. He supposed that it was one-sixth from the fact that the heirs of Gustave Sabatier were a nephew and five nieces, children of a predeceased brother and sister. Plaintiff inherited one-half of the estate as the sole heir of his father, and the nieces inherited the other half as the sole heirs of their mother. The heirs of the sister, prior to said sale, had renounced the succession, and the plaintiff had become sole owner of the property. But the fact of this renunciation was not known to the plaintiff. But without considering these outside facts, the recitals of the deed suffice to show that Dr. Sabatier was under the impression that he owned only one undivided sixth of the property. We agree with the judge below that the whole property was not conveyed, nor intended to be conveyed.
The next question is whether the defendant has acquired the whole tract by the prescription of ten years.
On February 11, 1897, Firmin Thibodaux *661 sold to William Cameron the following described property:
“A certain tract of swamp land, situated in the parish of Lafourche, on the left bank of Bayou Lafourche, at about fifteen miles below the town of Thibodaux, and forty arpents back from Bayou Lafourche, being the rear of the double concession of the tract of land belonging to, now or formerly, J. B. Guedry, and being_ lot No. 23, on a plan of Bougerol, deputy United States Surveyor, which plan is deposited and extant in the office of H. Seghers, notary public of New Orleans, and is known as plan No. 42.
“Being the same tract of swamp land or portion of Lot 23, purchased by Eirmin Thibodaux from Dr. Eugene Sabatier, on the 30th day of September, 1895, by act before G. J. Barker, clerk of court and ex officio notary public of the parish of Lafourche. See C. B. No. 29, P. P. 292 et seq.”
Cameron died, and one-fifteenth interest in his estate was inherited by his daughter Mrs. Annie S. Cameron, wife of Robert H. Downman. On October 15, 1900, the said Downman purchased from the other heirs of Cameron all their right, title, and interest in certain tracts or parcels of land, including the tract in dispute, which was described as in the act of sale from Thibodaux to Cameron supra.
On June 19, 1901, the said Downman and wife sold to the Bowie Lumber Company 51 different tracts of land in the parish pf Lafourche. The seventeenth tract was thus described:
“A certain tract of swamp land, situated in the parish of Lafourche, at about fifteen miles below the town of Thibodaux, and forty (40) arpents back from Bayou Lafourche, being the rear of the double concession, belonging to, now or formerly, J. B. Guedry, and being lot 23 on a plan of Bougerol, U. S. deputy surveyor, which plan is deposited and extant in the office of T. Seghers, notary public of New Orleans, and is known as plan No. 42. (For title see C. B. No. 34, p. 591 et seq.)
This suit was filed and service was accepted and citation waived on December 4, 1909'. As Downman purchased in 1900 and sold to defendant in 1901, it is evident that the possession of Cameron and his heirs must be tacked to that of Downman and the defendant in order to make out the 10 years’ period. The question is whether Cameron was a purchaser in good faith, without notice of the defects in his title.
Plaintiff’s counsel argues with great force that the recital that the land sold was the same tract of swamp land or portion of lot 23, purchased by Thibodaux from Sabatier, by notarial act, recorded in certain pages of a certain book of conveyances of the parish, was sufficient notice to put the purchaser on inquiry. The recital that the tract sold was “a portion of lot 23” is repugnant to the preceding recital that the tract conveyed was lot 23 as per a certain plan. The apparent conflict between the recitals created an ambiguity on the face of the act, which would have been readily removed by reference to the title of the vendor recorded only two years before. The cases cited in the opinion of the trial judge are not applicable to the facts of the case. In Benton & Milliken v. Sentell, 50 La. Ann. S69, 24 South. 297, the descriptive recital was as follows:
“Being- the undivided one-fifth interest inherited by the vendor from his father, John B. Coleman.”
In Mendelsohn v. Armstrong, 52 La. Ann. 1303, 27 South. 737, the court said:
“We do not think that the case of Heirs of Dohan v. Murdock, 41 La. Ann. 494 [6 South. 131], is in point, for the reason that in that case the defect in Dohan’s title to the property in suit was apparent, and could be ascertained by an inspection of the act under which he claimed ownership. The case here is different; the defect was not apparent and could not have been ascertained by an inspection of the act under which he claimed ownership.”
[2] In the case at bar there was an apparent contradiction in the description of the land conveyed by the deed, which was described both as lot 23, and as a portion of lot 23 as per the vendor’s recorded title. This contradiction could not have escaped the attention of a man of ordinary intelligence, and would have induced any man of ordinary prudenc-e to investigate the ven *663 dor’s title. The slightest inquiry would have disclosed to the purchaser that the vendor had a title to only one-sixth of the property. Cameron was a business man, and left a considerable estate. It is not to be presumed that he would have taken Thibodaux’s mere say-so that he had a good title to the property. The only reasonable explanation of the transaction, in the absence of all other evidence, is that Cameron knew what title Thibodaux had, and consented to purchase, taking the chance of holding the whole tract under his vendor’s ambiguous title. In our opinion Cameron knew the defects of the title he acquired, and therefore had no just reasons to believe that he was purchasing from the true owner. The evidence shows that the defendant has not cut any timber from the land in dispute.
It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiff and the defendant be recognized as joint owners of the tract of land described in the petition, in the proportion of five-sixths to the plaintiff and one-sixth to the defendant. It is further ordered that said tract of land be sold for cash, according to law, for the purpose of effecting a partition between the parties; that plaintiff’s demand for an accounting for timber be rejected; and this cause be remanded for further proceedings according to law. Costs of suit up to date in the court below, and costs of appeal, to be paid by defendant.