[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 160 
The matter before this court is a suit by appellant, Ruth N. Foy, for specific performance by her son and daughter respectively, appellees R.E. Foy, Jr., and Jane Loring Foy, of an option to purchase real estate.
 I
The facts are, in the main, undisputed; R.E. Foy, Sr., and Ruth N. Foy owned a one-half undivided interest in a parcel of real estate (approximately 20 acres) situated in Houston County, Alabama. A corporation owned and controlled by R.E. Foy, Sr., owned the other one-half undivided interest in that real estate.
In June of 1969, R.E. Foy, Sr., and Ruth Foy executed a general warranty deed, purporting to convey the entire twenty-acre parcel to their children, R.E. Foy, Jr., and Jane Loring Foy. They did not, it seems, at that time realize they owned only a one-half undivided interest in the parcel.
In July of 1969, R.E. Foy, Jr., and Jane Loring Foy executed an option contract, giving their parents the right, during their lifetimes, to repurchase said real estate for the price recited in the deed as the purchase price for the property. The parties stipulate that no money changed hands during these transactions. However, R.E. Foy, Jr., contends there was a credit entered in his father's books for payment.
Later, in March of 1970, R.E. Foy Company conveyed its interest in the tract to the children. That deed contained the following recitation:
 "Formerly a deed from R.E. Foy and wife Ruth N. Foy, to the within grantees conveyed this one-half undivided interest to the above tract of real estate, and this instrument conveys the one-half undivided interest of R.E. Foy Company in the entire tract of real estate formerly owned one-half by R.E. Foy Company and one-half by R.E. Foy, individually, to the present grantees in fee simple."
Subsequent to these transactions, a lot from the tract was conveyed to third parties named Henry. When the Henrys defaulted on a mortgage on the property, R.E. Foy, Jr., bought their interest in the lot. *Page 161 
R.E. Foy, Sr., died in 1976. Prior to his death, Ruth Foy was unaware of the option contract executed by Jane Foy and R.E. Foy, Jr. When she found the document in her husband's files, she recorded it in the Probate Office of Houston County, and notified her children she intended to exercise her option to repurchase the property.
Jane Foy was willing to comply with her mother's request that she convey the property to her mother. R.E. Foy, Jr., refused to submit to that request. He contends the option is invalid, and if valid, was revoked prior to acceptance.
Ruth Foy then instituted this action, seeking specific performance of the option by R.E. Foy, Jr. On motion of R.E. Foy, Jr., Jane Foy was added as an indispensable party defendant. Jane Foy has remained willing to convey the subject property to her mother throughout the course of this action.
Testimony was elicited which indicated that R.E. Foy, Sr., had contrived the conveyance of real estate in order to avoid estate and gift tax liability. The trial court concluded the transaction was fraudulent in nature. Its factual findings and conclusions are, in pertinent part, as follows:
 "It is quite clear that both conveyances of said real estate were contrived and made by R.E. Foy, Sr., to lessen any tax liability that normally arises from such transactions. The purchase price recited in said deeds, being much lower than the actual values, negated capital gain taxes. An effective deed to the defendants would also remove said real estate from R.E. Foy, Sr.'s, estate. The option back from the defendants could arguably defeat the claim of a gift and hence any gift taxes. Regardless of how weak or phony these contentions may be, there is no doubt that the motive to pay less tax prompted these transactions.
 "The defendant, Jane Loring Foy, says she understood that although the first deed and the option were not executed simultaneously, they were in fact related and intended to be part of the same package. The defendant, R.E. Foy, Jr., denies that he understood the transaction in this way, but admits that it was probably done to prevent gift tax liability. Considering the education of the defendant, Robert E. Foy, Jr., and his apparent business acumen, the court is of the opinion that he was at least as well advised and knowledgeable as his sister, the other defendant.
 "The plaintiff, of course, contends that the option is valid, and she seeks to have it enforced. The defendant, Jane Loring Foy, agrees with her claim and is willing to reconvey her interest in said real estate to the plaintiff.
 "The defendant, R.E. Foy, Jr., denies the validity of said option and refuses to make any conveyance of his interest in said real estate to the plaintiff.
 "Counsel for both plaintiff and the defendant, R.E. Foy, Jr., argue ably and well the respective contentions of these parties. Considering the relationships of the parties and the usual and normal attributes of inheritance that emanate from such relationships, it would appear that, valid or not, the defendant R.E. Foy, Jr., would have no objection to reconveying his interest in said property to his mother, the plaintiff, with the full expectation, that it would return again to him at her death. However, said defendant does not view his rights in this manner and the validity of the option is litigated.
 "The court is very much impressed with the variety of issues raised in this case and the keen analysis of the law relative thereto, which the attorneys present so well in their briefs. However, it is the opinion of the court that the main issue in this case is not the validity of the option, but the validity of the deeds which purport to have initially transferred the title of said real estate to the defendants. In considering the testimony and evidence as a whole, this court has repeatedly returned to this single issue and is unable to resolve it in a way that would validate these deeds. *Page 162 
 "The parties very candidly admit that the main purpose of these transfers was to avoid taxes. Done in a proper and legal manner this would be quite acceptable. But from the testimony and evidence in this case, the transaction from a tax standpoint was a sham, a legal fraud. Now all parties come into court and ask that the court approve this basic fraud, but to settle other issues between them that arise from the fraud. No court should be a party to such a settlement, much less a court of equity. Even though this issue was not raised by the parties or the pleadings, it is one which the court must recognize in order to prevent its being used or manipulated to serve an illegal purpose."
The trial court proceeded to vacate and set aside both deeds and the option contract. It later heard and denied Ruth Foy's motion for a new trial. She contends the trial court erred by vacating and declaring null and void the option and deeds and in denying her motion for new trial.
 II
It is a cardinal principle that, where testimony is taken ore tenus, the findings of fact made and entered by the trial court will be sustained unless they are clearly and palpably wrong or without supporting evidence, or are manifestly unjust. Renfroev. Weaver, 285 Ala. 1, 228 So.2d 764 (1969). That rule is without application, however, when the trial court erroneously applies the law to the facts before it. Price v. South CentralBell, 294 Ala. 144, 313 So.2d 184 (1975); Pruitt v. Key,281 Ala. 433, 203 So.2d 450 (1967); and Spears v. Taylor, 149 Ala. 180,42 So. 1016 (1907).
 III
Appellant Ruth Foy contends the trial court did erroneously apply the law to the facts in this case to find there was an illegal contact and a fraudulent conveyance. We agree.
The parties came into court to determine whether an executory option contract is enforceable and valid. The trial court, on its own motion, voided that contract and the deeds which transferred the land on the basis of the contract. Its authority for so doing is not clearly stated in its order, and we can find no legal or equitable authority under which that court's actions can be affirmed.
The trial court's decree seems to indicate it contemplated application of the "clean hands" doctrine in rendering its decision. We find that that doctrine, if indeed applied by the trial court, was improperly applied.
The theory behind the "clean hands" doctrine is that no cause of action can arise from an unrighteous inducement: exturpicausa non oritur actio. Thus, generally, where a party with unclean hands seeks relief, none is granted. In White v.Equitable Nuptial Ben. Union, 76 Ala. 251 (1884), that equitable principle was articulated:
 "The court will not lend its aid to either party, for the enforcement of an illegal executory contract, in an action to recover for its nonexecution; and when a contract, contravening good morals or public policy, has been fully and voluntarily executed, and the parties are in pari delicto, the court will not interfere with the acquired rights of either at the instance of the other. . . ."
76 Ala. at 264.
An exception to that general rule is where the court's refusal to grant relief will be productive of an offense against public morals or good conscience, or a reflection upon the integrity of the court. We find no indication that the trial court's refusal to act would have, under these circumstances, reflected poorly on that court.
Neither do we find any other equitable principle, maxim, or procedure on which to rest the trial court's decision to vacate the deeds and the option contract. Equity jurisdiction was invoked by the appellant in this case on the grounds that she had a right to specific performance of the option contract. It is axiomatic that equity will act to protect a right and to provide a *Page 163 
remedy not available at law. The trial court completely avoided the issue litigated by the parties, however, and declared the deeds and the option contract void. In doing so, it is not evident that the trial court sought to protect the right of any party with its equitable powers. The disposition by the trial court of the issues in this case seems to have uselessly altered their circumstances in that it has neither provided clear benefit to a party nor protected a legal right. It is axiomatic that equity will not use its powers to accomplish a useless purpose or to do a vain thing. Merchants National Bankof Mobile v. Morris, 273 Ala. 117, 136 So.2d 193 (1962).
The trial court's order indicates its concern with tax evasion by the parties. The Internal Revenue Service was not a party to this lawsuit and there is no indication its right to proceed against the Foys, if it so desires, has been or will be compromised in any way by this lawsuit, whatever the disposition. It is inappropriate for a court of equity to act in anticipation of possible future controversies. AmericanFederation of State, County and Municipal Employees v. Dawkins,268 Ala. 13, 104 So.2d 827 (1958). See also Ex parte Wallace Wallace Chemical Oil Corporation, 417 So.2d 940 (Ala. 1982).
 IV
Likewise, there seems to be no legal authority for the trial court's action. While Rules 15 (b) and 54 (c), ARCP, eliminate the necessity of strict pleading of issues tried with the implied consent of the parties, they do not provide a trial court with the authority to foist on the parties relief completely different from that contemplated by the parties, based on issues not raised by either party. See ContinentalCasualty Co. v. Barlar, 55 Ala. App. 441, 316 So.2d 690 (1975); and Greene v. Jones, 377 So.2d 947 (Ala. 1979). See alsoJackson v. Reed, 438 So.2d 750 (Ala. 1983).
Section 8-9-6, Code 1975, provides that conveyances or assignments of property with the intent to "hinder, delay, or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands . . . are void." However, the concurrence of three elements is essential before a conveyance can be declared fraudulent under this statute. It must be shown there is: (1) A creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. Roddam v. Martin,285 Ala. 619, 235 So.2d 654 (1970). Anyone is a creditor, under this section, who has a right by law to demand, either presently or upon future contingency, the fulfillment of any obligation or contract. Gannard v. Eslava, 20 Ala. 732 (1852).
The word "creditors" as used in the statute does not have a narrow or technical interpretation. Galloway v. Shaddix,197 Ala. 273, 72 So. 617 (1916). Thus, conceivably, any of the parties to this suit could have invoked this statute. However, the trial court itself notes in its decree that the issue was raised by none of the parties and clearly states the issue was raised sua sponte by that court:
 "Now all parties come into Court and ask that the Court approve this basic fraud, but to settle other issues between them that arise from the fraud. No Court should be a party to such a settlement, much less a court of equity. Even though this issue was not raised by the parties or the pleadings, it is one which the court must recognize in order to prevent its being used or manipulated to serve an illegal purpose." (Emphasis added.)
Because we find that, under these facts, no creditor is involved, the conveyance cannot be declared fraudulent under this statute.
 V
In summary, the trial court has determined the tax consequences of a land transaction where that issue was neither presented by the parties nor properly litigated as an issue. Because the distinction *Page 164 
between tax avoidance and tax evasion is often subtle and because the taxpayer clearly has a right to decrease the amount of his taxes, or to avoid them, by lawful means, we find the trial court's disposition of the issue, under these circumstances, inappropriate.
Therefore, because the trial court acted outside its equitable jurisdiction, and without legal authority, to vacate and set aside the deeds and the option contract, we hold it erred in refusing to set aside its order and grant a new trial to appellant. We reverse and remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
FAULKNER, ALMON and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.