DONALDSON, Judge.
Robert Bradford Johnson (“the former husband”) appeals from a judgment of the Blount Circuit Court (“the trial court”) modifying the judgment previously entered divorcing the former husband and Claire Wilcox Johnson (“the former wife”). We affirm the trial court’s judgment insofar as it addresses the former wife’s use of a specific residence, child support, and an award of attorney’s fees to the former wife. Because the former wife did not present evidence sufficient to show a material change in circumstances warranting an increase in periodic alimony, we reverse the judgment insofar as it modified the former husband’s periodic-alimony obligation.
The former husband and the former wife were divorced by the trial court on August 19, 2009. The parties had one child during the marriage, H.O.J. (“the child”). The parties shared joint legal custody of the child pursuant to the parties’ “separation agreement” that had been incorporated into the divorce judgment. The parties agreed that the former husband would be the “primary residential custodian” of the child; however, pursuant to the agreement, the parties alternated physical custody on a weekly basis. The parties further agreed that neither would pay child support to the other, based on the shared- *1127 physical-custody arrangement. In addition, the former husband agreed to pay periodic alimony of $8,000 per month to the former wife for a maximum of eight years.
On September 1, 2011, the former wife filed a petition to modify the divorce judgment. In the petition, the former wife asserted, among other things, that the former husband was often out of town and left the child in the care of hired nannies; that the former husband was unable to attend to the child’s needs; that the former wife needed child support for the child; and that it would be in the best interests of the child for the former wife to have sole physical custody.
On July 29, 2013, the trial court entered an order dismissing the case for lack of prosecution. On August 22, 2013, the former wife filed a motion to alter, amend, or vacate the judgment dismissing the case in which she asserted, in part, that the delay had been caused by the former husband’s refusal to participate in a deposition. The trial court granted the former wife’s motion and reinstated the case on August 26, 2013.
On September 26, 2013, the former husband filed an answer denying the allegations in the former wife’s petition and a counterpetition to modify the divorce judgment. In his counterpetition, the former husband asserted that the child resided with him in excess of the time allotted pursuant to the parties’ shared-custody arrangement and that it was in the child’s best interests for the former husband to have sole physical custody.
On January 22, 2014, the former wife filed an amended petition to modify in which she asserted the same grounds as previously raised, in addition to seeking a modification of alimony and asserting that the former husband had inflicted excessive corporal punishment on the child, that the former wife’s and the child’s expenses had increased, and that the former husband’s monthly income had increased by over two million dollars.
On January 26, 2014, former husband filed a motion to strike the former wife’s amended petition in which he asserted that the former wife first raised her allegation regarding alimony modification 28 months after she had filed her first petition and that she had failed to seek leave of court to amend the petition. On February 14, 2014, the former husband filed a request for a temporary restraining order to enjoin the former wife from speaking with the child regarding the current case. On March 24, 2014, the former wife filed a verified motion for immediate entry of temporary child support. On March 26, 2014, the former husband filed a motion to suspend the former wife’s custodial periods with the child and for psychiatric testing of the former wife.
On April 3, 2014, the former wife filed an ex parte motion for temporary sole custody of the child. On April 4, 2014, the former wife filed a response to the former husband’s motion to suspend her custodial periods with the child and for psychiatric testing of the former wife. On February 17, 2015, the child’s guardian ad litem filed a motion for an order of counseling for the child, and the former husband filed a motion in support of the guardian ad litem’s motion. On May 12, 2015, the former wife and the former husband each filed their respective answer denying the allegations in the other’s petition or amended petition to modify. The trial court held a trial on May 13, 2015, and August 6, 2015, during which it took testimony from the former husband and the former wife.
On September 4, 2015, the trial court entered its final judgment, which provides as follows:
*1128 “1. The [former wife’s] petition to modify for custody of the child, and the [former husband’s] counter-petition to modify for custody of the child are each denied. The initial order of divorce, which was by agreement, sets forth a true shared custody arrangement with each party having equal time with the child. The Court finds that neither party has shown that a change in the custody arrangement would be in the best interest of the child. Therefore, the parties shall continue with custody arrangement set out in the initial divorce decree.
“Furthermore, the Court orders that the parties shall cooperate regarding the care of the child. This includes, but is not limited to, physical, behavioral and mental health issues, and diagnosis and treatment of any such physical, behavioral or mental health issues; counseling; high school and college education; extra-curricular activities, including music, art, sports, equestrian skills. The parties shall not delay in getting second opinions regarding any current treatment the child is receiving. The parties shall follow doctor prescribed treatment regiments [sic]. The parties shall not allow the child to receive any tattoos or body piercing,, other than a single piercing of each ear.
“Should it occur that the custody periods for either of the parties do not match times when events, annual or otherwise, are happening or may be planned, then the parties are encouraged to work together to seek to accommodate each other. However, should the parties be unable or unwilling to accommodate each other, neither party shall inform the child of such inability to make such accommodations, and neither shall take such inability as a slight or an insult, or as the other being inflexible or obstinate. The parties made their agreement, and they shall live with it until the child reaches the age of nineteen.
“2. The [former wife’s] petition for modification for child support is granted. The [former husband] is ordered on October 1, 2015 to begin paying child support to the [former wife] in the amount of $3000.00 per month until the child reaches the age of nineteen, marries or becomes self-supporting. This is retroactive back to the filing of the petition on or about September 1, 2011. Because the retroactive aspect creates an arrearage of $144,000.00, the [former husband] shall pay such in 12 equal installments beginning November 1, 2015. The child support is an upward deviation from the child support guidelines due to the incomes of the parties. All payments are due on the first day of each month.
“3. The [former wife’s] petition for modification of alimony is hereby granted. The Court finds that the needs of the [former wife] have increased and the ability of the [former husband] to pay has increased. The [former husband] is ordered to pay the [former wife] alimony in the amount of $5,000 per month beginning October 1, 2015. All payments shall be due on the first day of each month and shall continue unless terminated by operation of law.
“4. The [former wife] shall be allowed to remain in and live in the home she is presently occupying until the child reaches the age of 21.
“5. The [former wife’s] petition to modify the requirement for her to maintain life insurance is denied.
“6. The [former husband] shall pay an attorney’s fee to the [former wife’s] attorney in the amount of $10,000 within 60 days of this order.
*1129 “7. The parties shall each pay an additional $1000 as a [guardian ad litem] fee ... within 60 days of this order.
“8. The Court finds that the total amount of monies that the [former husband] is ordered to pay under this order over the next thirty-five years (which is the life expectancy of the [former wife] pursuant to Social Security Actuarial tables) is less than two months of the [former husband’s] current income. Thus, the Court finds that such is reasonable and is not onerous or burdensome to the [former husband].
“9. All other aspects of the divorce decree entered on or about August 19, 2009 shall remain in force and effect.
“10. All other requests for relief by either party are hereby denied.”
On October 1, 2015, the former husband filed a motion pursuant to Rule 59(e), Ala. R. Civ. P., to alter, amend, or vacate the judgment. On October 9, 2015, the former wife filed a response to the former husband’s postjudgment motion. On December 1, 2015, the trial court denied the former husband’s motion to alter, amend, or vacate. On December 22, 2015, the former husband timely filed his notice of appeal to this court.
We must first address the former husband’s motion requesting that this court strike certain material from the former wife’s appellate brief. The former wife included information in her appellate brief relating to the purchase date of the residence that she presently occupies (“the Manor Drive residence”), but that information was not included in the record before the trial court. It is well settled that “ ‘this [c]ourt is bound by the record, and it cannot consider a statement or evidence in a party’s brief that was not before the trial court.’” M.F. v. W.W., 144 So.3d 366, 368 (Ala.Civ.App.2013)(quoting Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002)). Therefore, the former husband’s motion to strike is granted, and we will not consider the information in the former wife’s appellate brief relating to the purchase date of the Manor Drive residence.
On appeal, the former husband first argues that the trial court had no authority to enter an order permitting the former wife to remain in the Manor Drive residence until the child reached the age of 21. The former husband argues that the trial court wrongfully awarded a leasehold interest in real property that the former husband acquired after the divorce proceedings had begun. The husband asserts in his appellate brief that there is no dispute that the former husband purchased the Manor Drive residence after the parties’ divorce. However, the former wife asserts that the former husband purchased the Manor Drive residence for her and the child before the divorce judgment was entered and that she and the child had resided there since that time. The former husband testified at trial as follows regarding the Manor Drive residence:
“[Former wife’s attorney:] At the time that you filed for your divorce, you were looking for a residence for [the former wife] to reside in. Is that right?
“[Former husband:] Prior to the divorce?
“[Former wife’s attorney:] Right.
“[Former husband:] I actually started looking after we filed for divorce.
“[Former wife’s attorney:] And you in fact purchased the residence where [the former wife] now resides?
“[Former husband:] I did.
“[Former wife’s attorney:] And at that time that was the residence in Cull-man?
“[Former husband:] Correct.
*1130 “[Former wife’s attorney:] And that was purchased in your name?
“[Former husband:] I don’t know the answer to that question.
“[Former wife’s attorney:] Where is that home located?
“[Former husband:] ... Manor [Drive].
“[Former wife’s attorney:] And that is the residence where [the former wife] currently resides, isn’t it?
“[Former husband:] Yes, ma’am.
“[Former wife’s attorney:] And what did you pay for that residence at that time?
“[Former husband:] I believe it was over $150,000.
“[Former wife’s attorney:] And did you tell [the former wife] at that time that you were purchasing that residence for her and [the child] to live in there in Cullman?
“[Former husband:] Yes. [The former wife] had demanded after the divorce that she move to Cullman. I started looking for houses in Cullman.
“[Former wife’s attorney:] Did you purchase that home for [the former wife and the child] to live in?
“[Former husband:] Yes, ma’am.
“[Former wife’s attorney:] And you took [the former wife] to the house and showed it to her and that is where she moved.
“[Former husband:] Correct.”
The former husband later testified that he could earn rental income on the Manor Drive residence in the amount of $1,300 per month but that he had been renting it to the former wife for $400 per month. The former husband testified that he had reduced the rent for the former wife because, he stated: “I want what is best for my daughter. I want her in a good neighborhood, a good house and good situation.” From the testimony in the record, it appears that the former husband purchased the Manor Drive residence while the divorce action was pending for the purpose of providing the former wife and the child a place to live. Based on the evidence in the record, the trial court could have concluded that the Manor Drive residence had been part of the parties’ marital estate. See Hill v. Hill, 208 So.3d 1144, 1152-53 (Ala.Civ.App.2015)(holding that the entire value of a house the husband pm-chased while the divorce action was pending was part of the marital estate for purposes of property division). However, the trial court did not dispose of that property in the divorce judgment. “ '[W]hen a specific asset of the parties to a divorce action is not disposed of by the decree, the parties are left in the same position relative to that asset as they were in prior to the decree.’ ” Smith v. Smith, 892 So.2d 384, 389 (Ala.Civ.App.2003)(quoting Johnson v. Johnson, 585 So.2d 89, 90 (Ala.Civ.App.1991)). Therefore, based on the testimony and evidence presented, and in considering the needs and best interests of the child, the trial court could have concluded that the parties jointly owned the Manor Drive residence and could have reasonably fashioned the provision allowing the former wife to remain in the Manor Drive residence until the child reached the age of 21 in response to the testimony indicating that the former husband had threatened to evict the former wife and that the former wife would be unable to secure similar housing for the child.
The former husband asserts that the former wife did not request the trial court to award her the extended use of the Manor Drive residence and that the trial court was without authority to grant that unsolicited relief. The former husband cites Foy v. Foy, 447 So.2d 158 (Ala.1984), *1131 as support for his assertion. In Foy, our supreme court explained:
“While Rules 15(b) and 54(c), [Ala. R. Civ. P.], eliminate the necessity of strict pleading of issues tried with the implied consent of the parties, they do not provide a trial court with the authority to foist on the parties relief completely different from that contemplated by the parties, based on issues not raised by either party. See Continental Casualty Co. v. Barlar, 55 Ala.App. 441, 316 So.2d 690 (1975); and Greene v. Jones, 377 So.2d 947 (Ala.1979).”
447 So.2d at 163. The former husband and the former wife both testified regarding the purchase and use of the Manor Drive residence. The evidence indicated that the former husband purchased the Manor Drive residence during the divorce proceedings for the benefit of the former wife and the child. The evidence indicated that the former wife would be unable to obtain similar housing for the amount of rent the former husband required. The former husband further testified that he wanted the child to live in the Manor Drive residence because it is located in a good neighborhood. “The determination of whether an issue has been tried by the express or implied consent of the parties within the meaning of Rule 15(b), Ala. R. Civ. P., is a matter that lies within the discretion of the trial court. McCollum v. Reeves, 521 So.2d 13 (Ala.1987). That determination will not be reversed on appeal absent an abuse of discretion. Id.” Hathcock v. Hathcock, 685 So.2d 736, 738 (Ala.Civ.App.1996)). Based on the testimony, the trial court could have determined that this issue was tried by the implied consent of the parties.
The former husband next argues that .the trial court committed reversible error by increasing his periodic-alimony obligation from $3,000 per month to $5,000 per month because, he asserts, there was no evidence of increased need to support the award. The former husband argues that the parties had agreed to periodic alimony in the amount of $3,000 per month for a maximum of eight years and that the trial court’s modification imper-missibly increased and extended the former husband’s alimony obligation.
“It is well established in Alabama that the modification of alimony is a matter that rests within the sound discretion of the trial court and that the trial court’s judgment on that matter, following the presentation of ore tenus evidence, is presumed correct. See Ex parte Ederer, 900 So.2d 424 (Ala.2004); Schiesz v. Schiesz, 941 So.2d 279 (Ala.Civ.App.2006); and Hill v. Hill, 562 So.2d 255, 257 (Ala.Civ.App.1990). ‘ “Furthermore, this court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court.” ’ Schiesz, 941 So.2d at 289 (quoting Sellers v. Sellers, 893 So.2d 456, 461 (Ala. Civ.App.2004)). ‘Consequently, this court must determine if there was sufficient evidence to support the trial court’s judgment. If so, we must affirm.’ Hill, 562 So.2d at 257. However, if the trial court’s judgment is unsupported by the evidence so as to be plainly and palpably wrong, we will reverse. See Posey v. Posey, 634 So.2d 571, 572 (Ala.Civ.App.1994).
[[Image here]]
“At trial, the party seeking to modify a trial court’s judgment regarding alimony must make a showing that, since the trial court’s previous judgment, there has been a ‘material change in the circumstances of the parties.’ Posey, 634 So.2d at 572 (citing Garthright v. Garthright, 456 So.2d 825 (Ala.Civ.App.1984)). ‘ “Thus, the moving party must show a material change in the financial needs of *1132 the payee spouse and in the financial ability of the payor spouse to respond to those needs.’ ” Sosebee v. Sosebee, 896 So.2d 557, 560 (Ala.Civ.App.2004) (quoting Glover v. Glover, 730 So.2d 218, 220 (Ala.Civ.App.1998)).”
Newsome v. Newsome, 984 So.2d 463, 465-66 (Ala.Civ.App.2007).
Pursuant to the parties’ settlement agreement incorporated into the divorce judgment, the former husband had agreed to pay $3,000 per month in alimony to the former wife. The evidence indicated that the former husband’s income increased from approximately $679,000 annually at the time of the entry of the divorce judgment to $17 or $18 million or more annually during the pendency of the modification proceedings. The former husband concedes that he has the financial ability to pay the increased alimony obligation, but he argues that the former wife did not demonstrate a material change in her financial needs. We agree. An increase in the former husband’s income since the entry of the divorce judgment “is not enough to warrant a modification of alimony without ‘evidence ... indicating that the former wife’s corresponding financial needs had increased.’ ” Capone v. Capone, 58 So.3d 1258, 1262 (Ala.Civ.App.2010) (quoting Newsome, 984 So.2d at 466).
In support of her request for increased alimony, the former wife testified that she had been unable to obtain employment in her field of illustration and design following the divorce. However, the former wife also testified that she had occasionally worked part-time in retail. The former wife seemed to base her perceived change in circumstances primarily on the increase in her cost of living. This court has held that “increased living expenses alone, without additional justification, do not constitute a ‘material change in circumstances’ so as to warrant the modification [of] a previous alimony judgment, especially when the expenses are increased as a result of the payee spouse’s voluntary decisions.” Newsome, 984 So.2d at 466 (citing Webb v. Webb, 780 So.2d 698 (Ala.Civ.App.2000), and Stewart v. Stewart, 536 So.2d 91, 92 (Ala.Civ.App.1988)). The former wife testified that she would need an additional $2,000 per month in alimony to meet her expenses, but she did not specify what additional expenses warranted that requested $2,000 increase. The former wife testified that she had been unable to pay certain expenses, such as her co-pay for medical visits, her taxes, and vacation expenses. The former wife also testified that she often had to request money for gasoline from the former husband. However, the expenses to which the former wife testified she could not afford were expenses that were present at the time of the divorce and at the time the parties entered into their settlement agreement. “When ... a provision for periodic alimony is based upon the agreement of the parties, that provision should not be modified without close scrutiny....” Jeffcoat v. Jeffcoat, 423 So.2d 888, 890 (Ala.Civ.App.1982).
In addition, the former wife submitted into evidence a list of her living expenses, which totaled $3,197.92 per month. At least $285 of those itemized expenses were for the child’s clothing, school, and pet-care expenses. The former wife also testified that she had been unable to afford recreational and educational activities for the child. Those expenses are for the child and should be covered by the child-support award.
Furthermore, the former wife asserted that, if the former husband decided to stop providing her with health insurance as he had voluntarily done since the divorce, she would be unable to pay for her own health *1133 care expenses. The former wife also asserted that, if the former husband decided to evict her from the Manor Drive residence, she would be unable to afford a similar house. Those potential events do not constitute a change in circumstances. See Webb, 780 So.2d at 700 (noting that a petition to modify based on anticipated future events is speculative and should be filed after the change in circumstances has occurred).
The former wife testified that she was not able to live in the manner to which she had become accustomed during the marriage on $3,000 per month in periodic alimony. However, in this modification action, she was not permitted to revisit the propriety of the amount of alimony as of the time of the entry of the divorce judgment; instead, she was required to show that there had been a material change in circumstances since the entry of the divorce judgment. Because the former wife did not provide evidence to indicate that a material change in circumstances had occurred to warrant an increase in the former husband’s periodic-alimony obligation, the judgment is reversed as to the modification of the former husband’s alimony obligation.
The former husband also challenges the trial court’s child-support award on appeal and asserts that the award is not supported by the evidence.
“An award of child support may be modified only upon proof of a material change of circumstances that is substantial and continuing. Browning v. Browning, 626 So.2d 649 (Ala.Civ.App. 1993). The parent seeking the modification bears the burden of proof. Cunningham v. Cunningham, 641 So.2d 807 (Ala.CivApp.1994). Whether circumstances justifying modification of support exist is a matter within the trial court’s discretion. Id. We will not disturb the trial court’s decision on appeal unless there is a showing that the trial court abused that discretion or that the judgment is plainly and palpably wrong. Id.; Douglass v. Douglass, 669 So.2d 928, 930 (Ala.Civ.App.1996).”
Romano v. Romano, 703 So.2d 374, 376 (Ala.Civ.App.1997). The evidence indicated that, at the time of the trial, the former husband’s monthly income was approximately $1.6 million, while the former wife was unemployed.
“Rule 32(C)(1), Ala. R. Jud. Admin., provides that when the parties’ combined adjusted gross income is more than $10,000, the amount of child support to be awarded is left to the discretion of the trial court. However, that discretion is not unbridled. ‘The amount of child support awarded must relate to the reasonable and necessary needs of the [child] as well as to the ability of the obligor to pay for those needs.’ Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App.1995).”
D.D.S. v. L.A.W., 742 So.2d 797, 798 (Ala.Civ.App.1999). The parties had agreed at the time of the divorce that the former husband would not pay any child support to the former wife. Both parties testified that the cost of living had increased and that the child’s needs had increased as she aged; in particular, the evidence indicated that the child required more expensive clothing and accessories and that she participated in more social activities than she did at the time the divorce judgment was entered. The former wife testified that she was unable to match, during her custodial weeks, the lifestyle that the former husband was able to provide for the child. The former wife testified that she was unable to provide the child with the same standard of clothing the former husband provided and that she was financially unable to take the child on trips to see her maternal grandparents. The former wife *1134 also testified that she had requested financial help from the former husband to enroll the child in various camps and extracurricular activities, but, she said, he had refused to help. The trial court could have found that those circumstances justified a modification of child support, that the $3,000 monthly child-support obligation related to the reasonable and necessary needs of the child, and that the former husband had the ability to pay that obligation. Romano, 703 So.2d at 375; D.D.S., 742 So.2d at 798. Therefore, we cannot hold that the trial court abused its discretion in fashioning its child-support award to the former wife.
The former husband also argues that the trial court should not have made the child-support award retroactive to the date of the filing of the former wife’s petition. The trial court ordered that the former husband’s monthly child-support obligation of $3,000 was to apply retroactively to the date the former wife’s petition was filed on September 1, 2011, which created an arrearage of $144,000 that the trial court ordered to be paid in 12 monthly installments.
“The trial court may exercise its discretion in setting the effective date of a modification, but it is not bound to modify as of the date of the filing of the petition. Clutts v. Clutts, 54 Ala.App. 43, 304 So.2d 599 (1974); see also, Murphy v. Murphy, 491 So.2d 978 (Ala.Civ.App.1986). This matter is within the sound discretion of the trial judge, whose decision will not be disturbed unless it was so unsupported by the evidence as to be palpably wrong, manifestly unjust, or plainly erroneous. Culverhouse v. Culverhouse, 389 So.2d 937 (Ala.Civ.App.1980).”
Rogers v. Sims, 671 So.2d 714, 716-17 (Ala.Civ.App.1995).
The former husband asserts that the former wife is largely responsible for the delay between the filing of her petition and the entry of the final judgment. He asserts that she filed her petition on September 1, 2011, and that the trial court dismissed the petition in July 2013 based on the former wife’s failure to prosecute the case. However, the record indicates that the trial court reinstated the case in August 2013, after the former wife asserted that her delay in prosecuting the case was due to the former husband’s refusal to comply with discovery requests. In addition, the former husband filed two motions to continue the trial of this matter, which resulted in a delay of 10 months. The former wife filed only one motion to continue, which resulted in a delay of three months. Any other continuances were based on a request by the guardian ad litem or because the trial court decided to continue the trial.
The trial court heard evidence indicating that the child’s needs had increased and had continued to increase during the pen-dency of the proceedings. The former husband had not previously been ordered to pay child support, and the evidence indicated that the former husband’s income had drastically increased each year since the entry of the divorce judgment and had continued to increase while this modification action was pending. In light of those circumstances, we cannot say that the trial court abused its discretion in ordering that the child-support award apply retroactively.
In addition, the former husband asserts that the trial court was without authority to grant the retroactive award of child support because, he asserts, the former wife did not request that relief. The former husband again cites Foy, supra, as support for his assertion. As explained above, although we agree that a trial court does not have “the authority to foist on the parties relief completely different from *1135 that contemplated by the parties, based on issues not raised by either party,” the former wife did request an award of child support. Foy, 447 So.2d at 163. In her amended petition to modify, and at trial, the former wife asserted that there had been a material change in circumstances, that she was unemployed, that she was in need of child support, and that the child’s needs and expenses had increased. The former husband filed an answer denying the allegations in the former wife’s amended petition, and he heard the trial testimony. And, as explained above, it is within the trial court’s discretion whether to modify a child-support award retroactively. Rogers, 671 So.2d at 716-17.
The former husband lastly argues that the trial court’s award of attorney’s fees should be reversed based on insufficient evidence.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996). The former wife testified regarding her attorney’s hourly rate and the estimated hours her attorney had expended. The former wife testified that she had been unemployed, other than engaging in intermittent contract work, and that she was unable to pay her attorney’s fees. The former husband, on the other hand, earned approximately $1.5 million per month. Furthermore, this matter had been ongoing since 2011. The trial court was aware of the efforts expended by the parties’ attorneys during the course of these proceedings. The trial court did not abuse its discretion in ordering the former husband to pay an amount toward the former wife’s attorney’s fees.
For the reasons expressed in this opinion, we reverse the trial court’s judgment insofar as it increases the former husband’s obligation to pay periodic alimony to the former wife. Regarding the other issues the former husband has raised on appeal, the judgment is affirmed. The former wife’s request for an award of attorney’s fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., recuses herself.